**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

| | |
|---|---|
| In re: John J. Tworog, <br> Debtor | BK No. 18-11752 <br> Chapter 7 |

---

| | |
|---|---|
| John J. Tworog, <br>     Plaintiff, | |
| v. | A.P. No. 20-01008 |
| William Burke, <br>     Defendant. | |

---

### DECISION AND ORDER ON MOTION TO REOPEN CASE TO AMEND SCHEDULES AND TO RECONSIDER ORDER

Before the Court is plaintiff/debtor John J. Tworog's Motion to Reopen Bankruptcy Petition and Amend Schedules ("Motion to Reopen") (BK No. 18-11752, Doc. #209) and Motion to Reconsider Order ("Motion to Reconsider") (A.P. No. 20-01008, Doc. #225)[1] filed on October 17, 2022, invoking Bankruptcy Rule 5010 for the Motion to Reopen and Bankruptcy Rule 9024 for the Motion to Reconsider (collectively the "Motions").[2]

This adversary proceeding arises out of the vexatious divorce proceedings between Mr. Tworog and his former, now deceased, wife Dolores Tworog ("Dolores"). The defendant William Burke is an attorney who represented Dolores at some point during the divorce proceedings before the Rhode Island Family Court ("Family Court"). Mr. Tworog, a former

---

[1] Although these are two separate motions, they were filed as one document. Further, several documents, identical in substance and form, have been docketed in both the present adversary proceeding and the underlying bankruptcy case which was closed some time ago. Unless otherwise necessary, citations will be to the relevant docket entries in the adversary proceeding.

[2] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. Reference to "Bankruptcy Rule" shall mean the Federal Rules of Bankruptcy Procedure. Reference to "Rule" shall mean the Federal Rules of Civil Procedure.

lawyer, is appearing pro se in this adversary proceeding. This is his second attempt to get the Court to reconsider its May 14, 2021 decision and order denying the bulk of Mr. Tworog's first motion to amend the complaint commencing this proceeding ("May 2021 Decision," Doc. #73). It is also his second try at reopening his bankruptcy case in an effort to end-run that decision. (*See* BK No. 18-11752, Doc. #199). Once again the Motions fail.

Mr. Burke filed an initial objection to the Motions (Doc. #227), and later, as directed by the Court, supplemented his objection with a more detailed memorandum (Doc. #251).

After reviewing the Motions and the various related filings, the Court concludes that the Motion to Reconsider must be denied for reasons that will be explained in detail. As a corollary, the Motion to Reopen to amend schedules to assert an alleged stay violation claim against Mr. Burke dating back to 2013 also must be denied as futile.

## I.     Procedural History[3]

The relevant procedural history of this bankruptcy case and the adversary proceeding bears heavily in the Court's consideration of the Motions. Accordingly, a rather lengthy discussion of the same is provided. During the last 10 years, Mr. Tworog has filed five separate bankruptcy cases before this Court.[4] Relevant to the present proceeding is Mr. Tworog's 2013 bankruptcy case, during which this Court determined that the automatic stay under § 362(a) was in effect and halted, at least temporarily, the Family Court's adjudication of a contested matter during the divorce proceedings. (*See* BK No. 13-12130, Doc. #13). That case was short-lived and dismissed for failure to file required documents.

---

[3] *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket[.]").

[4] These cases are BK No. 10-13411; BK No. 11-11808; BK No. 12-11215; BK No. 13-12130; and BK No. 18-11752 (the present case). With the exception of the present case, these bankruptcy filings were skeletal cases that were dismissed for failure to file the requisite documents.

On October 23, 2018, Mr. Tworog filed the present bankruptcy case. On Schedule A/B (listing of assets), he disclosed the following claim: "Suit against Dolores Tworog, William Burke, and State of RI for Intentional Infliction of Emotional Distress." (BK No. 18-11752, Doc. #20, ⁋33). Ultimately, Mr. Tworog completed his obligations as a debtor and received his discharge. Thereafter, he filed a motion under Bankruptcy Code § 522(f) to avoid a judicial lien in the amount of $50,000, plus accruing interest, awarded to Mr. Burke by the Family Court for attorney's fees in connection with a contempt sanction. The lien was recorded against Mr. Tworog's personal residence. Solely as a precaution, Mr. Tworog also commenced this adversary proceeding attacking the lien in the event he was not successful in avoiding it in his underlying bankruptcy case. Mr. Tworog did indeed prevail and Mr. Burke's judgment lien was avoided under § 522(f) as impairing Mr. Tworog's homestead exemption.

On October 19, 2020, the underlying bankruptcy case was closed as fully administered. The adversary proceeding remained open for adjudication.

### A. Initial Motion to Amend Adversary Complaint[5]

Seeking continuation of this adversary proceeding to recover funds from Mr. Burke, Mr. Tworog filed a motion to amend his original complaint. (Doc #26). Through such amendment, he sought to assert various claims against Mr. Burke, including a claim that Mr. Burke had violated the automatic stay on an unspecified date while his 2013 bankruptcy case was pending ("2013 Stay Violation Claim"). The motion was devoid of legal citation and adequate factual allegations to support it, and most significantly, was not accompanied by a proposed amended complaint. Objecting to the motion, Mr. Burke raised the doctrine of judicial estoppel, arguing that the

---

[5] Mr. Tworog has on multiple other occasions sought to further amend the complaint throughout these proceedings, but these particular motions do not need to be discussed for purposes of resolving the present Motions before the Court.

3

schedules filed in the present bankruptcy case did not disclose the 2013 Stay Violation Claim. (Doc. #31, ℙ4). In his reply to the objection, Mr. Tworog did not disagree that he failed to list this claim on his schedules; rather, he argued that he had "outlined" these claims to the chapter 7 trustee at the § 341 meeting of creditors. (Doc. #43, ℙ9).

After the motion to amend the complaint was denied without prejudice, Mr. Tworog filed a proposed amended complaint describing several claims against Mr. Burke, among them, the alleged 2013 Stay Violation Claim. (Doc. #64, ℙ11). Supplementing his original objection, Mr. Burke again argued that Mr. Tworog "failed to disclose any potential claim against Mr. Burke on his Bankruptcy schedules[.]" (Doc. #70, ℙ5). Although he filed a reply, Mr. Tworog once again did not refute the charge that he failed to list the claim on his schedules. (Doc. #71, ℙ18).

### B. May 2021 Decision

In its decision and order entered on May 14, 2021, the Court permitted Mr. Tworog to amend the complaint only as to a claim against Mr. Burke for a stay violation that allegedly occurred during the present case in October 2018 ("2018 Stay Violation Claim"). Relevant to the current Motions before the Court, the amendment of the complaint to pursue the 2013 Stay Violation Claim was denied as futile because it is a prepetition claim that was not disclosed on the 2018 bankruptcy schedules. Consequently, the Court determined, among other reasons, that Mr. Tworog is judicially estopped from pursuing that claim in this adversary proceeding. (Doc. #73, p. 8).[6]

### C. First Motion for Reconsideration

Obviously dissatisfied with the Court's ruling, on May 28, 2021, Mr. Tworog filed his first motion to reconsider the May 2021 Decision (Doc. #80), as well as another motion to amend

---

[6] A trial on the 2018 Stay Violation Claim was held in June of 2022. For reasons not pertinent here, the Court's ruling on that claim has been held in abeyance due to other pending post-trial motions filed by Mr. Tworog.

4

and make additional findings (Doc. #81). The substance of both motions were identical and they simply stated in their entirety:

1. The Plaintiff states that the Court made various errors of fact and law in its decision.
2. Mr. Tworog notes the Court cited 46 cases in the decision that were not mentioned by the attorney for the Defendant.
3. The debtor requests the Court give him a reasonable amount of time to produce a memo to go along with this motion.

The Court denied both motions, primarily for failure to "establish a manifest error of law or fact or to present newly discovered evidence that warrants" alteration of the May 2021 Decision. *See In re Witkowski,* 523 B.R. 300, 308 (B.A.P. 1st Cir. 2014) (denying a Rule 59(e) motion because it was "a bare bones motion, devoid of factual or legal support"). (Doc. #89, p. 4).

### D. First Motion to Reopen Bankruptcy Petition to Amend Schedules

On June 21, 2022, over one year after the Court's May 2021 Decision and the day before the scheduled trial on the 2018 Stay Violation Claim, Mr. Tworog filed an expedited motion to reopen his bankruptcy case in order to amend his schedules to clearly list the 2013 Stay Violation Claim. (BK No. 18-11752, Doc. #199). In the motion, Mr. Tworog presented, *for the first time to this court*, his argument that his listing of a claim of "intentional infliction of emotional distress" against Mr. Burke on Schedule A/B is one and the same with the 2013 Stay Violation Claim and the Court erred in applying the doctrine of judicial estoppel to prevent him from amending the complaint to assert that claim.

During the day and a half trial, Mr. Tworog attempted to raise the 2013 Stay Violation Claim addressed in his first motion to reopen. However, he was barred from doing so because the 14-day objection period on that motion had not expired. Mr. Burke timely objected to this first motion to reopen (BK No. 18-11752, Doc. #200), Mr. Tworog filed a response (BK No. 18-

5

11752, Doc. #201), and the Court held a hearing on the motion on August 10, 2022. In a bench decision on the record, the Court denied the first motion to reopen on several grounds, including that the motion was futile in light of the May 2021 Decision determining that Mr. Tworog was estopped from pursuing the claim before this Court. (BK No. 18-11752, Doc. #204).

During the hearing Mr. Tworog maintained that he had previously raised the argument that his scheduling of the "intentional infliction of emotional distress" claim was intended as and sufficiently described the 2013 Stay Violation Claim. Although the Court had carefully reviewed the record and advised Mr. Tworog that it could not find this argument asserted in any of his prior filings, Mr. Tworog was given an opportunity to prove the Court wrong. He was given a brief period to file a statement informing the Court of the filings or hearings where he had previously raised this argument. (BK No. 18-11752, Doc. #205). He subsequently filed a response which failed to provide a citation to either the record or a prior filing in which he had previously made this argument—that the listing of a claim against Mr. Burke for "intentional infliction of emotional distress" is the equivalent of listing the 2013 Stay Violation Claim. (BK No. 18-11752, Doc. #207).[7]

This finally brings us to the present Motions.

### E. The Motion to Reconsider and the Motion to Reopen

On October 17, 2022, Mr. Tworog filed the Motions now before the Court. In the Motions, he states that he is filing under Bankruptcy Rule 5010 to reopen his bankruptcy case to amend his schedules to more clearly assert the 2013 Stay Violation Claim. He also refers to

---

[7] In his response he stated: "Mr. Tworog did previously state on many occasions that what he listed on Schedule A/B of his petition is the same as what Judge Finkle calls his 2013 stay violation claim." (Doc. #207, ¶11). He did not support the assertion with any citations to the record. He also referenced the "Statement of Issues on Appeal" he filed in connection with his appeal of the May 2021 Decision to the United States District Court for the District of Rhode Island. However, while that statement was filed with the clerk of this Court, as required by Bankruptcy Rule 8009, such statements are transmitted to the clerk of the court where the appeal is pending in accordance with Bankruptcy Rule 8010 and are not reviewed by this Court.

Bankruptcy Rule 9024 as the legal authority for reconsideration of the May 2021 Decision in order to assert the 2013 Stay Violation Claim.

In his objections, Mr. Burke argues that Mr. Tworog has failed to show cause to reopen his underlying bankruptcy case and that Mr. Tworog's motion seeking reconsideration is untimely. (Doc. #227; BK No. 18-11752, Doc. #210). Mr. Tworog replied to the objections, taking issue with what he referred to as "irrelevant" arguments and merely rehashing his prior arguments. (BK No. 18-11752, Doc. #211). After a hearing on the Motions, the Court ordered Mr. Burke to submit a memorandum of law in support of his objections. (Doc. #242).

Mr. Burke timely filed his memorandum, contending that the Motion to Reopen must be denied due to futility and failure to show cause under Bankruptcy Code § 350(b) and that the Motion to Reconsider was untimely, relying upon Rule 59(e). (Doc. #251).

With the procedural recitations behind us, the Court can now address the merits of the Motions.

## II.   Motion to Reconsider

### A. Rule 60(b)

Mr. Burke does not explain why he relies upon Rule 59(e), applicable to bankruptcy proceedings by Bankruptcy Rule 9023, in opposition to the Motion to Reconsider, when the motion itself references Bankruptcy Rule 9024, which incorporates Rule 60.[8] It is clear then that Mr. Tworog seeks relief from the May 2021 Decision under Rule 60, although he fails to identify the particular section of Rule 60 he is invoking.

---

[8] Rule 59(e) governs motions to alter or amend a judgment, but requires any such motion to be filed no later than 28 days after the entry of the judgment. In bankruptcy proceedings, that time frame has been reduced to 14 days by Bankruptcy Rule 9023.

7

Rule 60(b) provides for relief from a "final judgment, order or proceeding" for six mutually exclusive reasons. *See Klapprott v. United States*, 335 U.S. 601, 613-15 (1949). Mr. Tworog challenges the May 2021 Decision on the basis of legal error by this Court in its determination that he failed to list his 2013 Stay Violation Claim on his Schedules and is thereby estopped from asserting the claim in this adversary proceeding. Were Rule 60 the proper procedural vehicle here, Rule 60(b)(1) would be the controlling subsection—"mistake, inadvertence, surprise, or excusable neglect." *See Kemp v. United States*, 142 S. Ct. 1856, 1861-62 (2022) (resolving circuit court split and holding that a judicial error of law lies within the rubric of "mistake" referenced in Rule 60(b)(1)); *Triantos v. Guaetta & Benson, LLC*, 52 F.4th 440, 445 (1st Cir. 2022). Under this subsection, the Motion to Reconsider would have to be summarily denied as untimely. Rule 60(c)(1) establishes a one-year time limit, mandating that such motions must be brought within one year of the entry of a final judgment or order. The Motion to Reconsider was filed months after the expiration of the one-year period from the entry of the May 2021 Decision.

But Rule 60 is not the correct avenue for Mr. Tworog to seek redress, because the May 2021 Decision is not a final order. An order is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798 (1989) (citation omitted). "The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." Fed. R. Civ. P. 60, advisory committee's note to 1946 Amendment, Subdivision (b).

The May 2021 Decision did not end the litigation in the adversary proceeding; far from it. While Mr. Tworog was not permitted to amend the complaint to add all of his alleged claims against Mr. Burke, the order did permit him to amend the complaint to assert the 2018 Stay Violation Claim, which was later tried on its merits. Indeed, Mr. Tworog's appeal of the May 2021 Decision was dismissed because it was not a final order ripe for appeal. (*See* Text Order Dismissing Case, Tworog v. Burke, CV No. 21-00236-JJM-LDA (D.R.I Sept. 28, 2021)).

What then is the appropriate standard by which the Court must assess the Motion to Reconsider?

### B. Reconsideration of an Interlocutory Order

If a motion for reconsideration is untimely under Rule 59(e), and the challenged order is interlocutory, the applicable standard by which to review the motion is the "interests-of-justice test." *See IRS v. Murphy*, 564 B.R. 96, 111 (D. Me. 2016); *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (holding Rule 60(b) inapplicable where the district court should have dismissed only part of the case and not entered a final judgment, making the interests-of-justice test the proper standard to assess the motion for reconsideration).

A court applying the interests-of-justice test may, but is not required to, look to a specific rule of the Federal Rules of Civil Procedure. *Compare, e.g., Greene*, 764 F.2d at 22 ("[P]laintiff's motion to reinstate counts . . . should have been viewed as a routine request for reconsideration of an interlocutory district court decision dismissing *portions* of a complaint. Such requests do not necessarily fall within any specific Federal Rule. They rely on 'the inherent power of the rendering district court to afford such relief from interlocutory judgments . . . as justice requires.'") (citation omitted), *with, e.g., Murphy*, 564 B.R. at 98 ("[T]he bankruptcy court . . . acted contrary to law and abused its discretion in failing to consider the IRS's two

9

motions for reconsideration under the interests-of-justice test that Federal Rule of Civil Procedure 54(b)[9] requires.").

In deciding a motion for reconsideration under the interests-of-justice test, the Court of Appeals in *United States v. Roberts*, 978 F.2d 17, 21-22 (1st Cir. 1992), discusses seven factors a court may consider: (1) the nature of the case; (2) the degree of untimeliness; (3) the reasons for the untimeliness; (4) the character of the omission; (5) prejudice to the non-moving party; (6) judicial economy; and (7) the movant's likelihood of success, should the court revisit the interlocutory ruling.

While the *Roberts* factors may inform an interests-of-justice analysis, no single set of factors are determinative and the actual factors to weigh are dictated by the unique circumstances of each individualized case. *See Roberts*, 978 F.2d at 21 ("Justice is an ideal that defies precise definition[,]" so that it is "impossible to list a series of integers that will necessarily dominate the interests-of-justice equation in every case."); *United States v. Siciliano*, 578 F.3d 61, 72 (1st Cir. 2009) ("[T]he *Roberts* factors . . . are neither necessary to determining the interests of justice in every evaluation of a motion for reconsideration, nor are they particularly appropriate in this case."); *Ruiz–Rivera v. IRS,* 93 Fed. Appx. 244, 246 (1st Cir. 2004) (applying the interests-of-justice test without the *Roberts* factors).

### C. Analysis Under the Interests-of-Justice Standard

Applying the interests-of-justice test under the present circumstances, the Court finds these three factors—waiver, delay, and prejudice to the opposing party—weigh heavily against the relief Mr. Tworog requests.

---

[9] Bankruptcy Rule 7054(a) incorporates Rule 54(a) through (c).

1. <u>Waiver</u>

Although not expressly identified in *Roberts*, waiver is a factor courts have relied upon in deciding motions for reconsideration. *See Ramirez-Lluveras v. Pagan-Cruz*, 833 F. Supp. 2d 182, 190-191 (D.P.R. 2012) (citing *DiMarco–Zappa v. Cabanillas,* 238 F.3d 25, 33 (1st Cir. 2001)) (stating that failure to raise relevant claims in a timely manner results in waiver of such claims). When bringing a motion for reconsideration, plaintiffs are not permitted to "introduce new evidence or advance arguments that could and should have been presented to the district court." *See Ramirez-Lluveras*, 833 F. Supp. 2d at 190 (quoting *Aybar v. Crispin–Reyes,* 118 F.3d 10, 16 (1st Cir. 1997)). As the Court of Appeals aptly stated in *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003):

> Litigation is not a game of hopscotch. It is generally accepted that a party may not, on a motion for reconsideration, advance a new argument that could (and should) have been presented prior to the district court's original ruling . . . Litigants normally must frame the issues in a case before the trial court rules. After that point, a litigant should not be allowed to switch from theory to theory like a bee in search of honey. Against this backdrop, the district court scarcely can be said to have abused its discretion in refusing to reconsider its decision based on the plaintiff's newly raised argument.

Mr. Burke opposed the first motion to amend the complaint on the grounds that the 2013 Stay Violation Claim was a pre-petition claim not disclosed on the bankruptcy schedules, thus precluding Mr. Tworog from asserting it by amending his complaint in the adversary proceeding. In the face if this explicit challenge, Mr. Tworog did not rebut this charge and did not present the argument that his "intentional infliction of emotional distress" claim was intended to reflect the 2013 Stay Violation Claim.

Simply stated, Mr. Tworog's Motion to Reconsider "does not provide a vehicle for [him] to undo [his] own procedural failures . . . or advance arguments that could and should have been presented" at the time the first motion to amend and objection were before the Court for

11

determination. *Emmanuel v. Intl. Broth. of Teamsters, Loc. Union No. 25*, 426 F.3d 416, 422 (1st Cir. 2005) (citing *Aybar,* 118 F.3d at 16). Mr. Tworog has thus waived this belated argument. Under the applicable test, this factor weighs against granting the Motion to Reconsider.

There is another element of waiver here that also undermines the Motion to Reconsider. Neither in his first motion to reconsider nor the present Motions, or any other filings, has Mr. Tworog developed this belated argument or provided any legal support for his contention that the listing of a claim of "intentional infliction of emotional distress" is one and the same with the 2013 Stay Violation Claim. He simply declares it to be so. "It should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument. . . . Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." *Rodriguez v. Municipality of San Juan,* 659 F.3d 168, 175 (1st Cir. 2011); *see also Tejada–Batista v. Morales,* 424 F.3d 97, 103 (1st Cir. 2005) (stating that "[a]n argument not seriously developed" is waived).

    2. <u>Undue Delay</u>

Closely intertwined with the waiver factor is the undue delay in raising the argument Mr. Tworog now relies upon in the Motion to Reconsider. Mr. Tworog's delay here does not promote the interests of justice that would warrant granting the motion. "The length of a supplicant's delay is often a key factor in deciding whether to permit a pleading to be filed out of time. The longer a litigant dawdles, the less incentive exists for a court to reconsider." *Roberts*, 978 F.2d at 22.

Throughout the course of this adversary proceeding, Mr. Tworog has had ample opportunities to raise the argument that the "intentional infliction of emotional distress" claim

12

listed on Schedule A/B was intended to serve as his 2013 Stay Violation Claim. He failed to raise this argument: (1) through his initial motion to amend the adversary complaint; (2) in response to Mr. Burke's repeated objection that the 2013 Stay Violation Claim was not disclosed on Mr. Tworog's bankruptcy schedules; and (3) through his first motion for reconsideration. Instead, he waited over a year after the entry of the May 2021 Decision to assert this contention obliquely in his first motion to reopen the bankruptcy case, and only one day before the trial on the merits of the amended complaint. Further, he waited over 17 months after the issuance of the decision to assert the argument in the Motions. He provides no excuse or cause for such lengthy delay, and the Court finds the delay inexcusable.

In short, Mr. Tworog's lengthy, unexcused delay, and his continual failure to articulate his arguments with sufficient legal authority, serve as grounds to deny the Motion to Reconsider. *See Wells v. State Manufactured Homes, Inc.*, No. CIV. 04-169-P-DMC, 2006 WL 120087, at *2 (D. Me. Jan. 12, 2006) (stating that a motion to reconsider providing new arguments and authority, which could have been brought previously, "cuts against reconsideration").

3. Prejudice

Prejudice to Mr. Burke by such late assertion of Mr. Tworog's new argument also weighs heavily against the Motion to Reconsider. Prejudice may be inferred if any delay may have threatened to stall a trial, interfered with the non-movant's defense, or could unfairly injure the non-movant in the event the motion for reconsideration is granted. *See Roberts*, 978 F.2d at 23. It cannot be overemphasized that Mr. Tworog seeks reconsideration relying on an argument that was raised within 24 hours of the June 22, 2022 trial, at which point the parties had already litigated several issues, filed a litany of motions, completed the discovery process, and filed

13

detailed pre-trial statements.[10] The Court finds clear prejudice to Mr. Burke beyond the costs he has incurred to defend against the 2018 Stay Violation Claim, and the significant costs and delay that he would incur if the Motion to Reconsider were granted and discovery and a separate trial had to be conducted on the 2013 Stay Violation Claim. That additional prejudice arises because of Mr. Burke's compromised physical and mental condition which, at this late stage of the proceedings, greatly hampers Mr. Burke's ability to mount an effective defense to this late claim.

Mr. Burke is elderly, and based upon evidence submitted prior to the June 2022 trial, he suffers from dementia in addition to several other physical ailments. As a result, he was unable to travel from his retirement home in Arizona to Rhode Island to appear in person for the trial; he appeared virtually. During the trial the impact of his dementia was clear to the Court; he spoke fairly slowly, seemed dazed, and at times was confused by the questioning. Given his age and mental and physical impairments, his medical conditions are likely to worsen and adversely impact his capacity to withstand further protracted litigation in this adversary proceeding and competently defend himself at a new trial on the 2013 Stay Violation Claim. Such significant prejudice to the opposing side is just another factor closing the door on the Motion to Reconsider.

### III. Motion to Reopen

#### A. Applicable Legal Standards

Bankruptcy Code § 350(b) provides for the reopening of a closed bankruptcy case, stating that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Mr. Tworog, the movant, bears the burden of

---

[10] In addition to the prejudice factor, it is obvious that the interests of judicial economy are not served by the assertion of this belated ground for reconsideration, which could have been entirely avoided had Mr. Tworog timely presented his argument when he first sought to amend the complaint, and certainly in response to the challenge that the 2013 Stay Violation Claim is a pre-petition unscheduled claim.

demonstrating that sufficient cause exists. *See Colonial Sur. Co. v. Weizman*, 564 F.3d 526, 532 (1st Cir. 2009).

"The decision whether to reopen a bankruptcy case to allow amendment of schedules is within the sound discretion of the bankruptcy court." *In re Gray*, 57 B.R. 927, 929 (Bankr. D.R.I. 1986); *see also In re Ludvigsen*, BAP No. MB 14-039, 2015 WL 3733193, at *4 (B.A.P. 1st Cir. 2015). Certain factors courts have considered include, "the length of time that the case was closed; [ . . . ] whether any parties would be prejudiced were the case reopened or not reopened; [and] the extent of the benefit which the debtor seeks to achieve by reopening." *In re Dalezios*, 507 B.R. 54, 59 (Bankr. D. Mass. 2014) (quoting *Mass. Dep't of Rev. v. Crocker (In re Crocker)*, 362 B.R. 49, 53 (B.A.P. 1st Cir. 2007)). A case should not be reopened "if doing so would be futile." *Binette v. Bangor Sav. Bank (In re Binette)*, BAP No. EP 18-015, 2019 WL 1402731, at *5 (B.A.P. 1st Cir. March 26, 2019). And before reopening a case, a court should determine if the underlying claim is "likely to be sustained when considered on its merits." *In re Hardy*, 209 B.R. 371, 373 (Bankr. E.D.Va. 1997); *see also In re Smith*, 426 B.R. 435, 440 (E.D.N.Y. 2010).

### B. Analysis

Denial of Mr. Tworog's Motion to Reconsider the May 2021 Decision, including the determination that Mr. Tworog is estopped from pursuing the 2013 Stay Violation Claim, dooms the Motion to Reopen. That ruling remains in full force and effect, and Mr. Tworog cannot circumvent it by reopening his 2018 bankruptcy case to now explicitly list the 2013 Stay Violation Claim in order to pursue the claim against Mr. Burke in this Court. It would be futile to reopen the underlying 2018 bankruptcy case. Further, once again Mr. Burke would be significantly prejudiced by this belated tactic. Mr. Tworog has failed to establish sufficient cause to reopen his closed 2018 bankruptcy case under 11 U.S.C. § 350(b).

## IV. Conclusion

Based upon the foregoing, the Motions are DENIED.

Date: January 20, 2023                          By the Court,

*Diane Finkle*
_____
Diane Finkle
U.S. Bankruptcy Judge