**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

| | |
|---|---|
| In re:  John J. Tworog,  <br>       Debtor | BK No. 18-11752  <br>Chapter 7 |

---

| | |
|---|---|
| John J. Tworog,  <br>       Plaintiff | |
| v. | A.P. No. 20-01008 |
| William Burke,  <br>       Defendant | |

---

### DECISION ON 2018 STAY VIOLATION CLAIM
(this relates to Doc. ## 64, 86)

This matter, which is now ripe for decision, is a spin-off from Plaintiff John J. Tworog's divorce proceedings that spanned over twelve years and spawned four separate appeals by Mr. Tworog to the Rhode Island Supreme Court. Two of those appeals were resolved unfavorably to Mr. Tworog, and the third and fourth appeals are still pending.[1]

On June 22, 2022, the Court held a trial on Mr. Tworog's amended complaint. *See* Transcript ("Tr.," Doc. #214). Mr. Tworog asserts a claim against Defendant William Burke under Bankruptcy Code § 362(k)(1)[2] for violation of the automatic stay, seeking substantial damages. He contends that the stay was violated in October of 2018, two days after the filing of the above-captioned bankruptcy case, when Mr. Burke participated in the oral argument before the Rhode Island Supreme Court on behalf of his client Dolores Tworog, Mr. Tworog's former spouse, in the pending appeals. Mr. Burke counters that no willful violation of the stay occurred

---

[1] These appeals before the Rhode Island Supreme Court are docketed as *Tworog v. Tworog*, No. 2017-192-A and No. 2017-318-A.

[2] Unless otherwise indicated, the terms "Bankruptcy Code," "chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

and, even if the stay was violated, Mr. Tworog failed to establish any resulting damages. After consideration of the evidence adduced at trial and the parties' post-trial memoranda of law (Doc. ## 210, 218), the Court concludes that there was no stay violation.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 (applicable via Federal Rule of Bankruptcy Procedure 7052).

I. Jurisdiction

The Court has jurisdiction over this matter under 11 U.S.C. § 362(k)(1), 28 U.S.C. §§ 157(a) and 1334, and DRI LR Gen 109(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

II. Plaintiff's Amended Complaint

Mr. Tworog's original complaint filed in April of 2020 sought to invalidate a lien against his homestead awarded to Mr. Burke by the state family court in the course of the divorce proceedings. *See* Doc. #1. He also filed a separate motion in his underlying bankruptcy case to avoid the lien under Bankruptcy Code § 522(f), which the Court granted. Thus, the lien was avoided, mooting the original complaint.

Not satisfied with the release of the lien against his residence, Mr. Tworog sought leave to amend his complaint to assert several unrelated claims against Mr. Burke. In May of 2021, the Court entered an order granting leave to amend the complaint, but only as to one count against Mr. Burke—the alleged stay violation in 2018. *See* Decision and Order (Doc. #73). That Decision and Order sets forth the relevant background in this matter that need not be repeated here. It also specifically identifies those paragraphs of Mr. Tworog's proposed amended complaint (Doc. #64) that constitute the operative amended complaint (hereafter the "Amended Complaint") for the purpose of this adversary proceeding and the trial. *See* Decision and Order at

2

20.[3]

In his Amended Complaint, Mr. Tworog alleges that Mr. Burke violated the automatic stay when, two days after the petition date, he and Mr. Burke both appeared on October 25, 2018 before the Rhode Island Supreme Court for oral argument in Mr. Tworog's appeals (the "Appeal Hearing"). Allegedly, Mr. Burke, after being informed by Mr. Tworog that he had filed for bankruptcy and there was an automatic stay in place, proceeded to present his client's arguments on the merits of the appeal to the court. Amended Complaint ¶ 17. Mr. Tworog further alleges that the Rhode Island Supreme Court subsequently issued an order declaring, due to the automatic stay, that the hearing had been "invalid and any action that transpired was null and void." Amended Complaint ¶ 18. Mr. Tworog also complains that Mr. Burke "did not in any manner seek to void this hearing in which he violated the [automatic stay]." Amended Complaint ¶ 20.

The gravamen of Mr. Tworog's Amended Complaint is that: (1) Mr. Burke violated the automatic stay by proceeding with his merits argument before the Rhode Island Supreme Court after the filing of Mr. Tworog's bankruptcy petition; (2) this violation was willful because Mr. Burke knew of the pending bankruptcy case and the automatic stay; and (3) this violation caused him "pain and suffering and mental anguish" for which he should be awarded $100,000 in damages. Amended Complaint, introduction and ¶¶ 15, 17.

---

[3] To be clear, the operative Amended Complaint consists of the following portions of Mr. Tworog's proposed amended complaint: the introductory paragraph, paragraphs 15, 17, 18, 19, and 20 (the latter two paragraphs only as to the reference to the 2018 stay violation), and the requested relief clause.

III. <u>Applicable Law</u>

Bankruptcy Code § 362(a) provides that upon the filing of a bankruptcy petition, a stay arises automatically as to all entities of—

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title[.]

Redress for stay violations is provided by § 362(k)(1), which states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." To prove a claim under this provision Mr. Tworog is required to show by a preponderance of the evidence: "(1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." *Slabicki v. Gleason (In re Slabicki)*, 466 B.R. 572, 577-78 (1st Cir. BAP 2012) (citing *In re Panek,* 402 B.R. 71, 76 (Bankr. D. Mass. 2009)). "[A] violation will be found 'willful' if the creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." *In re McMullen*, 386 F.3d 320, 330 (1st Cir. 2004).

"Courts within the First Circuit have concluded that the words 'shall recover' [in § 362(k)(1)] indicate that 'Congress intended the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay.'" *In re Duby*, 451 B.R. 664, 670 (1st Cir. BAP 2011) (citing *Vázquez Laboy v. Doral Mortgage Corp. (In re Vázquez Laboy)*,

4

416 B.R. 325, 332 (1st Cir. BAP 2009)).

IV. <u>Trial</u>

At the outset it is important to mention that by the time of the trial Mr. Burke had retired from the practice of law to Arizona, he was elderly, and he suffered from dementia as well as other ailments. Due to his dementia and other medical conditions, as documented by his treating physician, Mr. Burke was unable to travel to Rhode Island for the trial and requested to appear remotely. *See* Doc. #172. His request was granted and the trial was conducted in a hybrid fashion; Mr. Tworog, who represented himself, counsel for Mr. Burke, and all other witnesses appeared in court in person while Mr. Burke appeared remotely via the Court's Zoom platform. This format presented no impediment for the Court during the trial and actually worked quite well.[4]

   A. *Plaintiff's Case*

Mr. Tworog called two witnesses at trial—himself and Mr. Burke. Testifying about his recollection of the hearing before the Rhode Island Supreme Court (*see* Tr. at 13-19), Mr. Tworog stated that on October 23, 2018, he filed his bankruptcy petition commencing this bankruptcy case. Two days later, when he arrived at the Rhode Island Supreme Court for the scheduled oral argument in his appeals, he informed that court and Mr. Burke of his bankruptcy filing.[5] A discussion between Mr. Tworog and the justices about his bankruptcy case and the

---

[4] To clear up any confusion, the reason this adversary proceeding could not be summarily decided is that oral arguments before the Rhode Island Supreme Court are not recorded. Rather, if a party desires to have a stenographic record of such proceedings, that party must seek permission of the court to employ a certified court stenographer for the hearing at the party's own expense. *See* Rule 33 of the Rhode Island Supreme Court Rules of Appellate Procedure. That was not requested for these appeals. *See* testimony of Mark Welch, Tr. at 97-99, a witness on behalf of Mr. Burke, who stated that he was advised by the clerk's office of the Rhode Island Supreme Court that a transcript of the Appeal Hearing was not available.

[5] Mr. Tworog actually testified that he informed Mr. Burke's counsel in this adversary proceeding, not Mr. Burke, of the bankruptcy filing, but the Court presumes that Mr. Tworog misspoke and intended to testify that he informed

5

impact of the automatic stay ensued. Thereafter, he alleges, the justices told him to proceed with his argument, and he did so. When he concluded, the justices called up Mr. Burke, who, according to Mr. Tworog, "went ahead and presented fully" his argument. Mr. Tworog gave a rebuttal argument, and Mr. Burke declined to give a rebuttal. Before he left the Rhode Island Supreme Court premises, Mr. Tworog filed his notice of bankruptcy with the court's clerk's office. About one week later, Mr. Tworog received a Rhode Island Supreme Court order dated November 2, 2018.[6] In that order, Mr. Tworog argues, the Rhode Island Supreme Court "basically admitted that they were wrong in going ahead with the hearing." The order actually stated in relevant part:

> The Court has since had the opportunity to review the bankruptcy notice, and it has concluded that these appeals are stayed in accordance with the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362. It is regrettable that the Court was not notified sooner of the bankruptcy filing or of the appellant's intent to file for bankruptcy.
> These appeals will be reassigned for argument after the automatic stay in this case is lifted.

Mr. Tworog concluded his testimony summarizing:

> So, that is basically my argument, that there was a hearing, Mr. Burke participated in it, and then after that and November 2nd, the Supreme Court admitted their mistake and they wiped out everything they did at that hearing and said that they would start over again when the automatic stay was lifted, which is what they should have done in the first place.

On cross-examination, Mr. Tworog was asked what specifically Mr. Burke said to the justices that violated the automatic stay, and Mr. Tworog responded that Mr. Burke generally

---

Mr. Burke of the bankruptcy filing, as throughout the remainder of his testimony Mr. Tworog states it was in fact the Defendant, Mr. Burke, who was present at that oral argument and not his counsel. *See* Tr. at 13; *see also* Mr. Burke's post-trial memorandum at Doc. #210 at 3, where he states that he too believes that Mr. Tworog misspoke in this instance.

[6] Both parties introduced this order as an exhibit at trial. It can be found at Doc. #178, exhibit 1.

presented oral argument on the merits of the appeal on behalf of his client, which Mr. Tworog contends violated the stay. *See* Tr. at 26-27.

Mr. Tworog then called Mr. Burke as an adverse witness. *See* Tr. at 39-49. Concerned about Mr. Burke's "mental disability," Mr. Tworog insisted on questioning him about the extent of his dementia. Indeed, he asked Mr. Burke directly: "What is the severity of your—what has been termed by your physician as dementia." Mr. Burke responded that he did not understand the question, and after some clarification, he replied, "I don't think I can answer that question." Mr. Tworog explored the issue further. *See* Tr. at 39-42.

> Q. Well, do you know who the present president of the United States is?
> A. I do.
> Q. Who would that be?
> A. President Trump.
> Q. Okay. So. I guess that answers the question. So you state back on 2018 that there was—you recall, that 2018, we had, myself and you, as Mrs. Tworog's attorney, had a hearing at the [Rhode Island] Supreme Court on October 25th of 2018?
> A. I do.
> Q. Do you know who the president was back then?
> ****
> Witness [Mr. Burke]: To the best of my recollection, I would have to say I believe it has not changed since that time [2018].
> ****
> Q. Now, just to be clear, he said that president—president at this time [the time of the trial in June 2022] is Donald Trump. There are some people who think Donald Trump is the president because they reject the results of the last election. So, I would like to ask Mr. Burke if he rejects the results of the last election?
> ****
> The Witness [Mr. Burke]: No.

It will become evident shortly why the Court highlights this exchange between Mr. Tworog and Mr. Burke.

Mr. Burke then testified about what he recalled occurred before the Rhode Island Supreme Court at the Appeal Hearing. He stated:

7

> To the best of my recollection, I appeared before the judges of the [Rhode Island] Supreme Court and explained that I had just thought there was an automatic stay in effect and that I was reluctant to giving testimony for that reason, because I didn't want anyone to then say that I had intentionally violated the automatic stay that was in effect, but if the Supreme Court made a -- had made a decision that I should testify, then I would do so….

*See* Tr. at 43. Mr. Burke on further questioning testified that "the judges indicated that I should proceed and I did.… I presented my client's position, yes. I did." *See* Tr. at 46-47.

Mr. Burke's counsel asked no questions of Mr. Burke, and that concluded Mr. Tworog's presentation of his case about what unfolded at the Appeal Hearing. Mr. Tworog also provided his testimony about the damages he asserts he sustained as a result of Mr. Burke's alleged violation of the stay. *See* Tr. at 49-69.

### B. Defendant's Case

In his defense two witnesses were called on behalf of Mr. Burke, Mark P. Welch and Denise Ash. Mr. Welch testified (*see* Tr. at 83-91) that he is an attorney who has been practicing law for more than 30 years, and he has known and shared office space with Mr. Burke for many years. Mr. Welch was present at the Appeal Hearing, which he noted he remembered "like it was yesterday." He was seated in the back row of the courtroom with Mr. Burke, his client Dolores Tworog, and Mrs. Tworog's friend Ms. Ash. (Sadly, during the course of this adversary proceeding and well before the trial, Dolores Tworog passed away.) Mr. Welch recalls Mr. Tworog entering the courtroom and handing Mr. Burke a document that Mr. Welch understood to be a notice of Mr. Tworog's bankruptcy filing. When the matter was called for oral argument, Mr. Tworog informed the justices that he had filed bankruptcy. Mr. Welch testified that a lengthy colloquy ensued between Mr. Tworog and Rhode Island Supreme Court Justice Maureen McKenna Goldberg:

> . . . and I remember, it just sits in my head, it struck me, and I would never say this, but he explained -- he was telling Justice Maureen McKenna Goldberg that she knew nothing about bankruptcy law, she knew nothing about federal law, and pretty much she didn't know what she was talking about . . .

According to Mr. Welch, Mr. Tworog did *not* then argue the merits of his appeal. Instead, there was a conversation between the justices as to whether or not they should go forward with the hearing in light of Mr. Tworog's bankruptcy filing and the automatic stay. They then asked Mr. Burke whether there was anything he would like to say. Mr. Welch testified:

> I remember [Mr. Burke] getting up slow from the counsel table, moving his way over to the podium, and he reached down to talk into the mic, and all he said that I recall was I am hesitant -- Your Honor, I am hesitant to say anything because I don't want to be accused of violating the stay. That's what I recall him saying.

Mr. Welch was quite clear that Mr. Burke was at the podium for no more than a minute or so and he did *not* argue the merits of the appeals. Asked if he was sure, he testified yes, there was no doubt in his mind that Mr. Burke did not present the merits of the appeals before the court.

On cross-examination (*see* Tr. at 92-97) Mr. Tworog asked about Mr. Welch's direct testimony and whether he "made that up." Mr. Welch responded "absolutely not" emphasizing:

> I remember that day, Mr. Tworog, as if it was yesterday. I know where I was sitting, what I was doing, and I remember that day as if it was yesterday, because in my 31 years of practice, Mr. Tworog, I mean I understand you're no longer an attorney anymore, but I've never seen an attorney tell a judge that she didn't -- he or she didn't know law, whether it's federal, state, or whatever, and I just -- I was in shock that I've never seen it in a courtroom ever, so I know what happened and I'm not making anything up . . . .

Asked by the Court for clarification on whether the Rhode Island Supreme Court went forward with the oral argument, Mr. Welch testified they did not:

> . . . they adjourned. In other words, they didn't hear it. In other words, Mr. Burke got up and said what he said to Chief Judge Suttell, and then Mr. Burke sat down, and I can't tell you verbatim, Judge, what – how it – how it came to – that agenda item came to an end, but it came to an end.

Next Ms. Ash testified (*see* Tr. at 103-09). She stated that she was a long-time friend of the late Dolores Tworog, she often would accompany her to court hearings during the divorce proceedings, and she attended the Appeal Hearing. She explained that she did not really pay attention to what Mr. Tworog said to the Rhode Island Supreme Court justices, but did recall generally what Mr. Burke stated to the court when he was briefly at the podium. Ms. Ash testified that she is positive that Mr. Burke addressed the court for "[l]ess than a minute" and that basically he advised the court (in her words): "I have submitted everything in writing and because of the bankruptcy I don't wish to proceed, you know, with any oral communication." He then waited for the justices to tell him they were finished with him, and then he sat down. She was unequivocal in her testimony that Mr. Burke did not discuss the family court case that was the subject of the appeals.

On cross-examination (*see* Tr. at 109-12), Ms. Ash further testified that she expected Mr. Tworog to tell the justices that the hearing should be stayed due to his bankruptcy because, when Mr. Tworog handed Mr. Burke the notice of bankruptcy, "[Mr. Burke] told [Dolores Tworog] that there was going to be a stay." When queried about Mr. Burke's statement during the trial that he had proceeded with his argument on the merits, she testified, "I believe he was mistaken." Finally, asked whether she was saying that when Mr. Burke told the justices that he was reluctant to go forward with an argument on the merits they "just closed up shop, that was the end of it," Ms. Ash responded, "Basically, yes." That concluded Mr. Burke's trial presentation of his defense.

10

This concluded the evidence portion of the trial and the parties then presented closing arguments. The parties also requested to submit post-trial memoranda, which was granted.

V. <u>Parties' Arguments</u>

Mr. Tworog argues, based on his own testimony and that of Mr. Burke, that he established a stay violation because (1) Mr. Burke presented an argument on the merits of the appeals before the Rhode Island Supreme Court at the Appeal Hearing, (2) the violation was willfully committed because prior to presenting that argument Mr. Burke knew of Mr. Tworog's bankruptcy filing and the imposition of the automatic stay, and (3) he showed that as a result of that violation he suffered damages in the form of emotional damages and various health consequences.

Mr. Burke, in contrast, relies on the testimony of Mr. Welch and Ms. Ash and argues that he did not violate the stay because he did *not* present argument on the merits of the appeals to the Rhode Island Supreme Court. He also maintains that Mr. Tworog cannot prevail on his claim even if the Court found a violation of the stay occurred because Mr. Tworog has not proven actual damages resulting from any such alleged violation.[7]

VI. <u>Findings of Fact and Conclusions of Law</u>

Cutting to the chase, the Court finds the testimony of Mr. Welch and Ms. Ash credible, reasonable, and truthful as to what occurred before the Rhode Island Supreme Court at the

---

[7] At the conclusion of the Plaintiff's case at trial, Mr. Burke's counsel made a motion under "Federal Rule 7050" for judgment as a matter of law, arguing that even if Mr. Burke argued the appeal on the merits he did so only after the Rhode Island Supreme Court justices were informed of Mr. Tworog's bankruptcy and determined that the oral argument should proceed. Therefore, as a matter of law, Mr. Burke cannot be considered to have willfully violated the stay. *See* Tr. at 74-82. The Court did not rule on that motion at that time, instead proceeding with Mr. Burke's presentation of his defense and permitting the parties to address the issue in post-trial memoranda. However, in his post-trial memorandum, Mr. Burke withdrew that motion, noting that Federal Rule of Civil Procedure 50 applies only in bankruptcy proceedings tried before a jury. Doc. #210 at 7, note 1.

Appeal Hearing. Thus, the Court concludes as a matter of law that Mr. Burke did not violate the automatic stay. With this finding, it is unnecessary to decide the damages issues.

Mr. Tworog latches on to that portion of Mr. Burke's testimony in which he responded that he followed the directives of the justices and presented substantive argument to the Rhode Island Supreme Court on the merits of the appeals. But in doing so Mr. Tworog ignores his own effective demonstration of the unreliability of such testimony because of Mr. Burke's dementia and the mental confusion it caused him during the trial. Throughout the trial the Court was fully able to observe Mr. Burke's demeanor. He seemed somewhat dazed and his speech was noticeably slow. His first responses to Mr. Tworog's questioning—that he advised the Rhode Island Supreme Court that he did not want to proceed because of the automatic stay and his fear of being accused of violating it if he presented argument on the merits of the appeal—is consistent with all of his pre-trial filings, his answers to interrogatories, and his arguments to this Court. It is also fully harmonious with what Mr. Welch and Ms. Ash testified occurred at the Appeal Hearing. The Court attributes Mr. Burke's inconsistent statement, that he presented his client's case on the merits, to his dementia and resulting confused mental state. Based on the entire record, the Court does not find Mr. Burke credible in that regard and affords that statement little weight.

Mr. Tworog also accuses Mr. Welch and Ms. Ash of "committing blatant perjury." *See* Doc. #218 at 3, ¶6. Mr. Tworog's accusations of perjury are incredulous. Neither of these witnesses had any stake in the adversary proceeding. Why would Mr. Welch risk potential criminal sanctions and the possible loss of his livelihood—his license to practice law—by committing outright perjury before this Court? Similarly, why would Ms. Ash risk potential criminal sanctions by committing perjury for her deceased friend? They would not. The Court

finds their testimony clear, specific, unwavering, and a truthful account of just what occurred before the Rhode Island Supreme Court at the Appeal Hearing: that Mr. Burke did not proceed with oral argument on the merits of the appeals. Conversely, Mr. Tworog's opposing testimony is vague, self-serving, and conclusory. While Mr. Tworog may, in his own mind, recall the Appeal Hearing as he recounted, his recollection is not credible and the Court rejects his account of that hearing.

Lastly, the Court agrees with Mr. Burke that the testimony of Mr. Welch and Ms. Ash is buttressed by the November 2, 2018 Rhode Island Supreme Court order. Although that order does not reference whether argument on the merits of the appeals had been presented at the Appeal Hearing, this Court finds it notable that the order directed that the appeal "will be *reassigned for argument* after the automatic stay in this case is lifted" (emphasis added), rather than that the appeal will be *assigned for reargument* once the stay is lifted. This language suggests that the Rhode Island Supreme Court did not in fact hear oral argument on the merits before it terminated the hearing.

Having found no stay violation, a judgment will be entered in favor of Mr. Burke.

Date: February 24, 2023								By the Court,

										_____
										Diane Finkle
										U.S. Bankruptcy Judge